# No. 28311

## The People of the State of Colorado v. Bailey Allan Belfor

(591 P.2d 585)

Decided March 5, 1979.

Robert B. Kane, Special Prosecutor, for complainant.

George J. Nichols III, for attorney-respondent.

*En Banc.*

MR. JUSTICE ERICKSON delivered the opinion of the Court.

The Supreme Court Grievance Committee, after a full disciplinary hearing, recommended that the respondent, Bailey Allan Belfor, be suspended for not less than one year and that he be assessed the costs of the disciplinary proceeding. *ABA Standards for Lawyer Disciplinary and Disability Proceedings* § 6.3. The respondent filed exceptions to the findings of fact, conclusions, and recommendations of the Grievance Committee which we have concluded are without merit. We adopt the recommendations of the Grievance Committee and suspend Bailey Allan Belfor from the practice of law for a period of one year and assess costs at $562.95.

The respondent's multifaceted violations of the Code of Professional Responsibility and the Disciplinary Rules require severe sanctions. The chain of events which brought about the disciplinary proceeding centers on a civil action to foreclose a lien. The respondent was counsel for Robert N. Poole and Anthony C. Bottagaro, a joint venture doing business under the name and style of Poole and Bottagaro. A civil action to foreclose a lien was filed against the joint venture by Harold E. Bergkamp, Inc., a building contractor. Harold E. Bergkamp, Inc. built an office building for the joint venture and had not been paid for some of the work on the building and for certain change orders. The foreman of the building project was Robert E. Francis, whose testimony was essential to establish the contractor's claim in the lien foreclosure action.

Poole and Bottagaro had come to know Francis well during the time that the building was being constructed. In early 1975, the foreman approached Poole and indicated that his testimony might be helpful to the joint venture in the lien foreclosure action. Poole caused the respondent to be made a party to the conversation. Francis, the foreman, then told the respondent that his favorable testimony would only be available, and would only be made known, after a judgment against him was satisfied. The judgment against the foreman had been obtained by Silver State Placements, Inc., an employment agency that had arranged for Bergkamp

to hire Francis. Francis told the respondent that Bergkamp had agreed to pay the employment fee and that Bergkamp also owed him a bonus for work he had done on the office building.

The employment agency obtained a default judgment against Francis in September, 1974, nearly a year before Francis met with the respondent. The respondent, in an effort to obtain the cooperation of Francis, suggested that he represent Francis as an intervenor in the pending lien foreclosure suit. To further the proposal, the respondent prepared an intervention agreement which would have put Francis in a preferred position with respect to Poole and Bottagaro in the event that Francis and the joint venture were successful in obtaining judgment on their counterclaims against Bergkamp.

Francis rejected the respondent's proposal and said that he would not cooperate until the judgment for the employment fee was satisfied. The respondent then volunteered his services as attorney for Francis and negotiated a compromise and settlement of the employment agency's judgment for $1,500. The $1,500 was paid by respondent from funds provided by the joint venture. To insure that Francis complied with his agreement, the respondent caused an installment note, bearing the date of May 9, 1975, to be prepared to reflect the amount paid to the employment agency. The note, however, was not signed until March 29, 1976, the evening before the mechanic's lien foreclosure action was to come to trial and the date when respondent and his clients, Poole and Bottagaro, learned that Francis was not going to provide favorable testimony.

When Francis refused to testify for the joint venture, respondent concluded that there was no defense to the lien foreclosure action, and a settlement was promptly made. Thereafter, when the installment note was due, the respondent filed suit in his own name and obtained a default judgment against Francis. A complaint before the Grievance Committee had already been filed at the time the default judgment was taken. The lawyer for Francis had the default judgment set aside over the respondent's objection.

■ The respondent's actions and conduct in this case constitute violations of Disciplinary Rules 1-102(A)(5), 5-103, 5-105(A), 5-105(B), 7-102(A)(7), 7-104(A), and 7-109. His conduct was prejudicial to the administration of justice, constituted an attempt to purchase favorable testimony, and clearly indicates his unfitness to practice law. His misconduct commenced when Francis came to his office in 1975. It was apparent from that time on that Belfor was prepared to offer benefits to Francis which would compromise the amount of Poole and Bottagaro's claim. He also provided funds to cause a key witness to provide favorable testimony for his clients in the lien foreclosure.

■ In seeking to secure a bonus for Francis as an intervenor in the lien foreclosure suit and to cause Francis to have a right superior to Poole

and Bottagaro, the respondent violated one of the most basic of the requirements relating to a lawyer's professional responsibility. A lawyer is required to provide undivided fealty to his client. He cannot represent adverse interests or take a position against his client without the latter's clear, informed consent. Regardless of whether he represented Francis or Poole and Bottagaro, the conflicts created by the intervenor's agreement are apparent. This conflict issue, however, is not as grave an offense as that which the respondent committed when he attempted to purchase favorable testimony from Francis.

It is conceded that the respondent, in dealing with Francis, the key witness, was, as he said, attempting to "prime the pump" of information. The record establishes that payment of the judgment obtained against Francis by the employment agency was meant to be a gift to Francis, contingent upon his favorable testimony, or a loan with a contingency that it would be forgiven if he testified favorably.

The respondent, Belfor, did not comply with the provisions of Rule 241(B), C.R.C.P., which prohibits the violation of the Code of Professional Responsibility and requires compliance with accepted ethical standards. The conduct of the respondent not only violated the previously enumerated provisions of the Code of Professional Responsibility, but also contravened a number of Disciplinary Rules which have been specified. The proscriptions of Ethics Opinion 44 (adopted February 14, 1970) are also applicable.

DR7-109(C) provides, in pertinent part:

"A lawyer shall not pay, offer to pay, or acquiesce in the payment of compensation to a witness contingent upon the content of his testimony or the outcome of the case."

We can say no more than our Grievance Committee said in its findings of fact, conclusions and recommendations:

"In representing a client, a lawyer is prohibited from counseling or assisting his client in conduct that the lawyer knows to be illegal or fraudulent. It is both illegal and against public policy to pay or tender something of value to a witness in return for his testimony." *See* DR7-102, Representing a Client Within the Bounds of the Law.

Accordingly, the respondent, Bailey Allan Belfor, is suspended from the practice of law for the period of one year from the announcement of this opinion and is assessed costs in the amount of $562.95. The costs are to be paid to the Clerk of the Supreme Court within sixty days. Respondent may not apply for reinstatement prior to the expiration of the period of his suspension, and will not be reinstated at that time unless he can demonstrate by clear and convincing evidence: (1) that he has been rehabilitated; (2) that he has complied with and will continue to comply with all applicable disciplinary orders and rules; and (3) that he is competent and fit to practice law. *ABA Standards, supra* § 6.4.